6-0, Ford Motor Company versus United States. Ms. Ellsworth, please proceed. Good morning, Your Honor, and may it please the Court. Jessica Ellsworth on behalf of Ford Motor Company. There are four keys to understanding and resolving this appeal. First, a foreign sales corporation, or FISC, was a congressionally prescribed tax device to incentivize exports. Let me ask you a general question. Did Ford ever take any positions in litigation before the WTO, arguing that FSC should be considered separate entities from their U.S. companies for purposes of calculating tax liabilities? I'm not aware of any participation by Ford in the WTO proceedings. But as you note, Your Honor, the WTO did conclude that the FISC statute was a prohibited export subsidy, and on that basis, Congress repealed it. Ford's FISC export was, at all times, it's undisputed, operated consistent with the statute and consistent with the regulations. That means that it was operated as a bookkeeping exercise in offsetting accounting entries. Well, there was a little more to it than that. There was a little more to it than that. There was a separate incorporation, which is something that the government has focused on, and there was two contracts, one in which the FISC export agreed to undertake certain activities to receive a commission. In the other, Ford agreed to undertake those activities on export's behalf. Did any of the FSCs ever appear before the WTO? I'm not aware of any. I'm doing that because you say Ford, and I said Ford, but nobody related to them. I'm not aware of any participation before the WTO. What was the government's position before the WTO as to whether these were separate or the same entities? Well, I want to be clear. They are separate entities. I don't think that's the question here. The starting point, I think, for the 6621 analysis in Wells Fargo is that you have two separate entities, and the question is whether they should be deemed the same taxpayer within the meaning of that term in 6621D. So I assume that the government took the position that they were separate entities because that is the only position that's consistent with the way the statute and the regulations are set up. Sure, but if we're just looking at Wells Fargo, I forget which of the scenarios it's described, but it's undisputed on the facts of this case that export and Ford merged back together after this period of liability. So under the plain holding of Wells Fargo, it's not entitled to this netting. Your Honor is correct that under merger law, it wouldn't be entitled to this holding, and the specific scenarios that were identified and discussed in Wells Fargo were merger scenarios. But I think the framework that the court adopted where it looked to the background legal principles to guide its determination about what same taxpayer meant is what's relevant here. But isn't that why, I mean, frankly, you lose? Because the basic legal framework is Congress set up this statutory scheme that was intended to provide sufficient separation between the two entities so that it wouldn't be violating international treaties and wouldn't be subject to a WTO claim. It failed, but that was the whole point of the statute, to create sufficient separation between the two of you. Well, I think what Wells Fargo says is you look a little more deeply than that. What Congress intended was to create really sort of an incremental step from the DISC regime that had preceded it. And it sought to put in place a foreign requirement because DISCs had been domestic, and it sought to put in place some caps on the amount of income that could be exempted from tax through using this kind of tax system. Well, it sought to satisfy GATT requirements as interpreted by the WTO. It did, but it did that in a very minimal way. And I think if you look at the legislative history of the FISC, which we cite in our brief, it sought to do so. Just a harmless little sham. It's something that Congress thought would be sufficient to pass muster. And to be clear, Congress was trying to do this to give American exporters the same leg up that it felt that European companies were getting from their own governments. And so it sought to impose minimal burdens. And that's exactly what the United States told this court when it came in 2009 in the Abbott Labs case describing FISC. It told the court over and over in its brief that FISCs were artificial constructs that were just about a tax benefit. They were not ordinary subsidiaries. They should not be treated as ordinary subsidiaries. They were quite different from ordinary subsidiaries. And I think when this court issued its opinion, it specifically focused on that. You can see that at page 1331 of the court's opinion, where it recites the government's position that despite technically having separate incorporation, a FISC is an artificial construct that exists solely to facilitate the tax benefit afforded by Congress. On page 11 of the blue brief, you say that Ford paid the IRS $336 million in tax overpayment during the relevant time period. Did Ford make those overpayments with intent of asking later for global netting? As to export, there's nothing in the record that indicates anything about how that overpayment was calculated, and I'm not aware of anything that describes it. I think as the case came to the Court of Federal Claims, the parties entered into a stipulation on the relevant facts that identified the 1992 overpayment that underpayments that occurred throughout the 1990s made by export. And so the question as it became relevant when the case was filed is whether export and Ford should be deemed the same taxpayer within the construct of 6621D. And I think in Wells Fargo, one of the key things that the court... So the gist of your argument is that Congress intended these statutes to basically say they're separate enough for the WTO, but they're same enough for netting. Well, at the time that the Fisk statute was put in place in 1984, there was effectively interest netting because there were no different interest rates for overpayments and underpayments. So at some point, the government suggests Ford is trying to get a double benefit here by being able to get the tax benefits of a Fisk and being able to get the tax benefits from interest netting. But when the Fisk statute was put in place and when Congress calibrated what the benefit was going to look like, interest netting was effectively the norm because there were no different interest rates. So there's no kind of secondary attempt to get an extra benefit at play here. This is really an attempt to return to the status quo of what the situation was in 1984 when the Fisk statute was put in place. And that is relevant under Wells Fargo because this court looked to the background legal principles of what Congress would have known when it legislated, when it added the term 6621D in 1998. So 14 years after the Fisk statute has been put in place, Congress uses the term... But we know Congress, in enacting the Fisk statute, was attempting to create some kind of separate structure that wouldn't violate WTO or wouldn't be subject to a WTO proceeding. And if they weren't worried about that, then Ford could have just exported directly and Congress could have given them subsidies directly. But they're going through some kind of legal structure so that under the GATT it's a separate entity. They are going through some kind of legal structure, that's right. But as the United States told this court in its Abbott's brief, that structure... It has a different corporate structure. It has a different board. It has a different employer identification number. All of that stuff, right? Yes. It had a different incorporation. It had a different taxpayer identification number. It didn't have any employees, so I don't know that it had an employer identification number. But it filed different tax returns. Well, it had to have some kind of number if it was filing tax returns. It wasn't using Ford's. It couldn't use Ford's because it was a foreign entity. So it couldn't, under the consolidated return rule, file as part of Ford's return. But when the United States came to this court previously... Let me ask you this. If you have a parent company and it files a consolidated return and it has a separate subsidiary that is included on that return, but the separate subsidiary has a different board, a different corporate structure, a different EIN, can you net between that subsidiary and the parent? My understanding is that netting occurs on the basis of the consolidated return. So all of the entities that are filing the consolidated return together. Even with different EINs? That's my understanding of the way that it works. I think there's a bit of an open question that came about because of the position the government took in the Magma Power case. But this issue, as I understand it, is that there is netting across consolidated returns. And the question here, though, is whether this fisc that Congress authorized is sufficiently close to Ford to be deemed a same taxpayer under a broad reading of the term same taxpayer to effectuate the remedial purpose. And in Wells Fargo, by my count, the court said more than six times that this term should be broadly construed to effectuate its remedial purpose. That remedial purpose was to remedy unfairnesses that resulted after Congress decided to allow different interest rates. And to be clear, the court looked not only at the legislative history of 6621D, but at the history of the decade it took to get to 6621D and the Treasury Department's stubbornness about implementing broad interest netting remedies for large corporations. But the unfairness is all based upon the notion that it's the same taxpayer. And they shouldn't essentially be paying over money to the IRS when their underpayments and overpayments net out. In other words, they pay the precise amount of tax. But that doesn't have anything to do with whether they're the same taxpayer or not. Well, I think it does, Your Honor, for the same reason that in looking at Wells Fargo in the third situation the court addressed, where at the time the initial overpayment was made, you had two entirely separate corporations. They had no relationship at all. Yes, but at the time, and I don't know which it was under or over. It really doesn't matter. But at the time the other payment was made, they had merged into the same entity. And we looked at merger law to conclude that they were the same entity all the time. That scenario doesn't help you at all. You agree, right? How does it help you? You agreed that your merger occurred after both the overpayment and underpayment was made, which in Wells Fargo we said didn't qualify for netting. So it helps us for reasons unrelated to merger law. It helps us because what the court clarified in Wells Fargo is that the key time under the earlier East Energy case is that they have to be the same taxpayer at the time an overpayment is made and at the time an underpayment is made. And at the time one of those two payments was made, they were completely separate organizations. So then the question was, did background legal principles justify treating them as the same, even though at the time one of those payments were made, they were separate? In this case, we're relying on different background legal principles. I grant you that. It's not merger law. It's the FIS statute. It's the implementing regulations. It's the same sorts of treatises and commentators that this court looked to in Wells Fargo to set the background legal principles. Were there any statutes, tax statutes, enacted after the FSC scheme was created that mentioned the interplay and relationship with FSCs? There were a series of export related tax statutes that were passed, but I don't know that what Congress put in place after the FIS regime specifically referred to the FIS regime. It was a separate statute. If I may reserve the remainder of my time for my rebuttal. Yes. Thank you. Mr. Calderon, please proceed. Good morning, Your Honors. My name is Richard Calderon, and I represent the United States in this appeal. May it please the court. At all times relevant to this case, export was a separately incorporated subsidiary of Ford. And no court has ever held that a subsidiary and its parent corporation are entitled to global interest netting under Section 6621D. There's a very good reason for that, which is that it's been settled for three quarters of a century since the Supreme Court's decision in the Moline Properties case that corporate subsidiaries are separate taxpayers from their parents. That is consistent with and underscored by the definition of taxpayer in Section 7701 of the Internal Revenue Code. As any person, including any corporation, subject to tax, that rule holds even if a parent corporation not only wholly owns its subsidiary, but wholly controls its subsidiary so that the two are substantially identical in practice. An export's separate nature is underscored here by the fact that it not only had its own taxpayer identification number, but consistently filed its own tax returns at all times at issue in this appeal. Well, and that it's designed to be separate in order to satisfy the WTO. That's the whole point. Yes, Your Honor, that is entirely the point of the FISC statute, and Ford's attempt to rely on the FISC statute should also be rejected for a second separate reason. As the Supreme Court recognized in the Boeing case, and as this court recognized in Abbott Laboratories, FISCs are not a free-floating license for a corporation to claim whatever tax benefits it decides it wants to claim. Rather, the FISC statute provides for carefully limited benefits, and it's undisputed here that Ford claimed and received all of those benefits. Now, of course, there are other narrow situations in which a corporation's separate existence may be disregarded for federal taxation purposes. Let me just ask you a hypothetical. What if instead of the FISC statute, Congress had a statute that accorded special tax treatment to a division within Ford as opposed to a separate entity within Ford? And so the statute said, if you create a separate functioning statute, and you create different books and the like to handle only exports, so we know we're only giving you a subsidy for your exports, but nevertheless you pay all your taxes under your parent company, would those be the same taxpayer for purposes of netting? Even though one's the domestic division and one's the export division? Your Honor, if they're simply separate divisions of the same corporation, it has one taxpayer identification number, files one tax or something? So they could probably get netting there. That would probably violate the GATT, which is why they didn't do it like that, but they could have. They could have in that circumstance, yes, Your Honor. But I take it your friend's argument is that this is essentially what they've done, but they've twisted it a little bit to make it acceptable under the GATT, but it's still really just incentivizing and giving tax breaks to Ford for its exports. And so it's not really anything different than that division scenario. But it is different, Your Honor, because Congress could have passed the statute. You suggested Congress could have created a regime in which a corporation is treated as having formed a separate export corporation without actually doing so. In fact, my understanding is that the current extraterritorial income exclusion in Section 114 proceeds along those lines. But in the FISC statute, Congress required corporations to form subsidiaries, and Congress expressly stated when it did this that those subsidiaries were to have economic substance and stand apart from their parents. And so in this regard, Congress intended— It was carefully crafted in order to satisfy the WTO requirements. There's no question about that. Certainly, Your Honor, it was carefully crafted. But in the regard of standing apart from their corporate parents, FISCs were intended to be no different from any other corporate subsidiary. And that was exactly the position that the government took in the Abbott Laboratories case. It was common ground there that FISCs were both separate entities and separate taxpayers. That's at page 1329 of your opinion, page 100 of the Court of Federal Claims opinion. In fact, as we point out in our brief, if the government believed that FISCs were not separate taxpayers from their parent corporations, the dispute in Abbott never would have occurred. The question there involved Abbott's attempt to retroactively change the transfer pricing method and allocate additional income to its FISC subsidiary. The government objected because the statute of limitations on assessing additional tax against the FISC had expired. Had the FISC and its parent corporation been the same taxpayer, the government simply could have assessed the tax against Abbott. There would be no need to try to assess the tax. Is Ford arguing at all that the separate corporate status was in fact a sham and they were a taxable unit? Your Honor, Ford expressly argued that in the Court of Federal Claims, but on page 2 of its reply brief on appeal, it has expressly disclaimed any reliance on a sham corporation or lack of economic substance theory on appeal. So Ford is no longer arguing that. And so the government's position, as I understand it, boils down to if you have separate corporations, you just don't get to take advantage of 6621 denetting absent sham or some other unique situation like that. But separate corporations just ends it, right? Yes, that's correct, Your Honor. It's a very simple position. The WTO didn't hold that FSCs were shams. It just held that they were unsatisfactory. Isn't that right? That's my understanding. I have not seen the relevant WTO opinion, Your Honor. But even if the WTO had held that corporations were shams, that FISCs were shams, it would make no difference because WTO standards and U.S. law standards are different. Yes, but to make sure I understand the tax law correctly, which I do not proclaim to necessarily do, if we were to find or if the court of federal claims were to have found that the separate corporate structure was, in fact, a sham, they could conclude it was a taxable unit, and then netting would apply, right? Yes, Your Honor. If a FISC were a sham corporation, netting would apply. That's the reason I asked. Thank you. Certainly, Your Honor. And finally, Your Honors, I would note that Ford itself consistently treated its FISC as a separate corporation over the course of two decades. Ford prepared export separate tax returns. Ford claimed the benefits that came with having a separate FISC. Ford engaged in that complicated series of mergers intended to erase the distinction between export and itself. And even Ford's claim in this case could not have been brought if export had not been a separate corporation. To have an interest netting claim, you need to have a separate underpayment and overpayment. And the only reason there's a separate underpayment and overpayment on this record is that export was a separate taxpayer that filed a separate tax return. If the court has no further questions, we ask that you affirm the judgment of the court of federal claims. Thank you, Mr. Calderone. What about that last argument? I liked that last argument by your opposing counsel. That is that unless they were separate, you couldn't have even brought them. There's no question that they were separate. That's the starting point for the analysis. 6621D, as this court said in Wells Fargo, is about determining when, despite the separateness, two entities are entitled to be treated under the broad remedial meaning of the statutory term same taxpayer. So there's never been a question that these are two separate entities. The problem with your argument is in Wells Fargo, we relied on merger principles, which treated those entities as the same. You're relying on a statute that specifically treats them differently. Your Honor, I disagree with that, and here's why. The place the court looked in Wells Fargo was to the code, was to treasury regulations, and was to principles of merger law found in commentary. And what principle of law are you relying on to suggest that Expert and Ford are the same? We are relying on the statute. It's not the Fisk statute, right, because the Fisk statute intentionally treats them differently. Actually, Your Honor, the Fisk statute treats them differently only in a technical, formal sense. The Fisk statute, and we are relying on the statute and the regulations. They set up a form-only regime. Congress intended it to be just separate enough to maybe survive GATT review. It didn't. It was a form-only regime. The WTO called it on being a form-only regime. The government itself told this court that it was nothing more than an accounting and record-keeping exercise, and that it was more nominal than substantive. Although the Court of Federal Claims found it had economic substance, neither the court nor the government has pointed to any economic substance. There isn't any. It was set up to have commissions flow to Export, and those commissions then were returned as a dividend to Ford. There was no economic substance by congressional design, and that merits the broad remedial regime of same taxpayer that this court endorsed in Wells Fargo. Thank you, Your Honor. I thank both counsel. The case is taken under submission. All rise. Your Honor, the court is adjourned until tomorrow morning at 10 a.m.